IN THE UNITED STATES COURT FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| Leigh A. Ward : | |
| c/o Attorney Joshua J. Brown : | Case No. |
| 3979 Main Street : | |
| Hilliard, OH 43026, : | Judge |
| : | |
| Plaintiff, : | Jury demand endorsed hereon. |
| : | |
| v. : | |
| : | |
| City of Columbus : | |
| Zach Klein, Columbus City Attorney : | |
| Civil Division : | |
| 90 W. Broad Street, Room 200 : | |
| Columbus, OH 43215 : | |
| : | |
| Defendant. : | |

VERIFIED COMPLAINT

For her Complaint against the City of Columbus, Ohio Plaintiff states as follows:

PARTIES

1. Leigh A. Ward is a resident of Ohio.

2. The City of Columbus is a city in the United States Southern District of Ohio.

JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1342, and to the extent applicable 1367 because this case involves the interpretation of a federal law, the effect of government agencies' interpretation of that law, and the Plaintiff's rights pursuant to that federal law.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (d), because: 1) Plaintiff resides in this District; 2) Defendants' primary place of business is in this district; and 3) "a substantial part of the events or omissions giving rise to all Plaintiff's claim occurred" in this District.

## STATEMENT OF FACTS

5. Leigh A. Ward began working as an employee of the Franklin County Municipal Court in January of 2017.

6. Ward was assigned as the Community Service Coordinator for the Community Clean Up Crew, which was a program in the Environmental Division of the Franklin County Municipal Court.

7. This program involved organizing and supervising the clean-ups of public areas and neighborhood beautification projects.

8. Typically, the people doing the clean ups were defendants who agreed to do so as part of a criminal proceeding (community service).

9. As Ward ran the program, Ward became aware of multiple violations of various laws, health and safety regulations, and ethical duties on the part of the program. Many of the concerns put the people doing community services at risk.

10. After Ward raised several concerns, as noted below, Ward was terminated as retaliation for the concerns Ward brought up.

11. Ward is a licensed social worker. Ward felt she had a duty to bring these concerns to the attention of the people with authority over the program.

**Concerns that Ward Raised:**

12. People in the program were asked to remove solid waste and human waste with nothing but thin cotton gloves, which caused unhealthy reactions from the people in the program. This fails to meet the legally required standards and puts the people in the program at risk.

13. Ward was ordered by the environmental division to go to one particular neighborhood, the "Hilltop" for a very disproportionate amount of cleanup work.

14. At a community event in Linden, a person from the environmental division denied that the order referred to in paragraph 13 was given. Through an inter-office email, Ward's direct supervisor was told that Ward was being dishonest about the order, and that Ward should be disciplined for saying that this order was given. This is despite the fact that the order was given through inter-office email.

15. Ward was asked to have the program do impermissible clean ups on private property, even though these particular clean-ups are not allowed under the program's rules.

16. Ward was denied access to power tools that were provided by the Ohio Environmental Protection Agency under the Ohio EPA Litter Management Grant.

**Acts of retaliation**:

17. The full-time staff person in the program was cut from the program. That left Ward with only one part-time person.

18. Shortly after Ward was terminated, the program positions were restored.

19. Ward's department was previously reimbursed for costs to maintain her social worker license. Those expenses were cut.

20. Ward was refused administrative equipment that other administrative environmental division employees were provided, such as a laptop computer, certain tools, bug spray, hand-sanitizer, sun screen, first aid kit replacement items, leather gloves for pulling thistles, and other items needed to operate the program field work safely.

21. After Ward was terminated, the program was granted access to use those tools.

22. Ward was denied the opportunity to use probation officers, by offering the "comp-time" if they helped .

23. This was provided after Ward was terminated.

24. Ward was required to complete additional administrative reports that were not required of other probation supervisors or environmental division administrative staff.

25. Ward was denied self-defense training and equipment offered by the probation department, and any other training that would help keep her safe while in the field. Incidents with violent people occurred several times while WARD was in the field without support staff.

26. After Ward was terminated, the replacement staff was given many of these items and opportunities.

27. The part-time community service officer that was hired refused

instructions, intimidated people, broke equipment, refused to follow program protocols, and was verbally intimidating to me and others. Administration refused to discipline him.

28. Ward was forbidden by the environmental division from going to community meetings without specific permission in writing. This was not required of other employees.

29. Ward had an order from Ohio Bureau of Workers Compensation that Ward was to remain on light duty because of an injury to her ankle.

30. Ward was made to do double duty and walk much more, which violated her light duty orders.

31. The administration required Ward to have two vehicles at the field sites, but did not provide someone to drive the second vehicle. Ward was specifically denied requests to remedy this.

32. Ward came to the office of Director of Human Resources Jeff Carter Sulley to voice her concerns. Sulley told Ward that part of her job description was to "protect the judges" implying that voicing her concerns was violating her duty to protect the judges. He refused to meet with Ward or have any further to discuss Ward's concerns.

33. Ward asked for a meeting with Assistant Court Administrator and acting Human Resources Director John Davenport in order to discuss her concerns.

34. Davenport sent Ward an email that said he would only discuss the concerns with Ward if certain environmental divisions administrators were present.

35. Ward voiced her concerns to her direct supervisor Community Sanctions Supervisor Christine Seymour, Human Resources Assistant Morgan Smith, and Chief Probation Officer Alicia Zerman.

36. Seymour sent requests for meetings with court administration and the human resources department so that Ward could voice my concerns. Those requests were denied.

37. Smith initially scheduled a meeting with John Davenport, but it was cancelled and never rescheduled.

38. Zerman said she would pass on Ward's concerns to the court administration.

39. Although Ward asked many times, Ward was never able to voice her concerns to the top court administration or the Human Resources Director.

40. After Ward's efforts as described above, Ward was terminated.

41. After being terminated, Ward was not given an opportunity to clean out her office or retrieve many of her important personal items. Ward has asked for the same multiple times.

42. After Ward was terminated, certain emails and photographs were destroyed.

43. After Ward was terminated, replacement staff misrepresented the terms of Ward's termination to community stakeholders, which damaged Ward's reputation in her industry.

## COUNT ONE: VIOLATION OF NONRETALIATION PROVISION
## OF THE FAIR LABOR STANDARDS ACT

44. Plaintiff incorporates the preceding as if fully restated herein.

45. The facts stated above show clear retaliation for voicing complaints that Ward's program was violating laws and rules.

46. Thus, this constitutes a violation of the nonretaliation provisions of the Fair Labor Standards Act.

47. An employer who violates these nonretaliation provisions is subject to a civil action brough by the aggrieved employee for such legal or equitable relief as may be appropriate to effectuate the purposes of the FLSA, including liquidated damages, attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with relief as the Court deems appropriate.

Plaintiff demands a trial by jury.

November 17, 2023                              Respectfully Submitted,

/s/ Joshua J. Brown
Joshua J. Brown (0089836)
Attorney at Law
3979 Main Street
Hilliard, OH 43026
P: (614) 284-4394
F: (614) 388-3947
josh@joshbrownesq.com
Attorney for Plaintiff

IN THE UNITED STATES COURT FOR THE SOUTHERN DISTRICT OF OHIO

Leigh A. Ward, :
:
    Plaintiff, :
:
v. :
:
City of Columbus, :
:
    Defendant. :

## AFFIDAVIT

State of Ohio    )
                 ) SS:
County of Franklin  )

I Leigh A. Ward, after being duly cautioned and sworn, upon personal knowledge or information, hereby avers as follows:

1. I am an adult and competent to testify as to the matters set forth in this affidavit.

2. I offer the following testimony on personal knowledge.

3. I began working as an employee of the Franklin County Municipal Court in January of 2017.

4. I was assigned as the Community Service Coordinator for the Community Clean Up Crew, which was a program in the Environmental Division of the Franklin County Municipal Court.

5. This program involved organizing and supervising the clean-ups of public areas and neighborhood beautification projects.

6. Typically, the people doing the clean ups were defendants who agreed to do so as part of a criminal proceeding (community service).

7. As I ran the program, I became aware of multiple violations of various laws, health and safety regulations, and ethical duties on the part of the program. Many of the concerns put the people doing community services at risk.

8. After I raised several concerns, as noted below, I was terminated as retaliation for the concerns I brought up.

9. I am a licensed social worker. I felt I had a duty to bring these concerns to the attention of the people with authority over the program.

**Concerns that I Raised:**

10. People in the program were asked to remove solid waste and human waste with nothing but thin cotton gloves, which caused unhealthy reactions from the people in the program. This fails to meet the legally required standards and puts the people in the program at risk.

11. I was ordered by the environmental division to go to one particular neighborhood, the "Hilltop" for a very disproportionate amount of cleanup work.

12. At a community event in Linden, a person from the environmental division denied that the order referred to in paragraph 12 was given. Through an inter-office email, my direct supervisor was told that I was being dishonest about the order, and that I should be disciplined for saying that this order was given. This is despite the fact that the order was given through inter-office email.

13. I was asked to have the program do impermissible clean ups on private property, even though these particular clean-ups is not allowed under the program's rules.

14. I was denied access to power tools that were provided by the Ohio Environmental Protection Agency under the Ohio EPA Litter Management Grant.

**Acts of retaliation:**

15. The full-time staff person in the program was cut from the program. That left me with only one part-time person.

16. Shortly after I was terminated, the program positions were restored.

17. I was previously reimbursed for costs to maintain my social worker license. Those expenses were cut.

18. I was refused administrative equipment that other administrative environmental division employees were provided, such as a laptop computer, certain tools,

bug spray, hand-sanitizer, sun screen, first aid kit replacement items, leather gloves for pulling thistles, and other items needed to operate the program field work safely.

19. After I was terminated, the program was granted access to use those tools.

20. I was denied the opportunity to use probation officers, by offering the "comp-time" if they helped me.

21. This was provided after I was terminated.

22. I was required to complete additional administrative reports that were not required of other probation supervisors or environmental division administrative staff.

23. I was denied self-defense training and equipment offered by the probation department, and any other training that would help keep us safe while in the field. Incidents with violent people occurred several times while I was in the field without support staff.

24. After I was terminated, the replacement staff was given many of these items and opportunities.

25. The part-time community service officer that was hired refused instructions, intimidated people, broke equipment, refused to follow program protocols, and was verbally intimidating to me and others. Administration refused to discipline him.

26. I was forbidden by the environmental division from going to community meetings without specific permission in writing. This was not required of other employees.

27. I had an order from Ohio Bureau of Workers Compensation that I was to remain on light duty because of an injury to my ankle.

28. I was made to do double duty and walk much more, which violated my light duty orders.

29. They required me to have two vehicles at the field sites, but did not provide someone to drive the second vehicle. I was specifically denied requests to remedy this.

30. I came to the office of Director of Human Resources Jeff Carter Sulley to voice my concerns. Sulley told me that part of my job description was to "protect the judges" implying that voicing my concerns was violating my duty to protect the judges. He refused

to meet with me any further to discuss my concerns.

31. I asked for a meeting with Assistant Court Administrator and acting Human Resources Director John Davenport in order to discuss my concerns.

32. Davenport sent me an email that said he would only discuss the concerns with me if certain environmental divisions administrators were present.

33. I voiced my concerns to my direct supervisor Community Sanctions Supervisor Christine Seymour, Human Resources Assistant Morgan Smith, and Chief Probation Officer Alicia Zerman.

34. Seymour sent requests for meetings with court administration and the human resources department so that I could voice my concerns. Those requests were denied.

35. Smith initially scheduled a meeting with John Davenport, but it was cancelled and never rescheduled.

36. Zerman said she would pass on my concerns to the court administration.

37. Although I asked many times, I was never able to voice my concerns to the top court administration or the Human Resources Director.

38. After my efforts as described above, I was terminated.

39. After being terminated, I was not given an opportunity to clean out my office or retrieve many of my important personal items. I have asked for the same multiple times.

40. After I was terminated, certain emails and photographs were destroyed.

41. After I was terminated, replacement staff misrepresented the terms of my termination to community stakeholders, which damaged my reputation in my industry.

By signing this affidavit, I acknowledge that all the statements contained herein are true, complete, and accurate to the best of my knowledge and that the Court may rely on the truth of each of these statements. I have consulted with legal counsel about this statement and I understand that I am signing under penalty of perjury.

FURTHER AFFIANT SAYETH NOT

Date: 11/16/2023

Leigh A. Ward
Leigh A. Ward

Subscribed and sworn to before me this ____16th____ day of ____November 2023____

Date: 11/16/23

Notary

My Commission expires: ____N/A____